Good morning. Hold on. Let's let the court settle down a little bit. Mr. Salter? Yes, Your Honor. Okay, Mr. Salter. May it please the Court, John Salter of the Barnes Law Group for the State Defendants, which includes the State Election Board and the Secretary of State's Office, which is currently occupied by Brad Raffensperger. You know, one of the things that was curious to me is I looked at your Notice of Appeal and the State Election Board is the board itself. In their official capacity, yes, Judge. No, no, no, listen to me. The board itself, as opposed to the individual members of the board in their official capacity, is named as a defendant in one of the complaints, the Curling complaint, the second amended complaint, but you didn't file a Notice of Appeal on behalf of the board. I believe that. I thought that we did. Looking at it. Okay. Come now, Brian Kemp in his official capacity as Secretary of State of Georgia, of course, he's been substituted by law, and the members of the State Election Board, David J. Worley, Rebecca Sullivan, Ralph Simpson, and Seth Harp, in their official capacities, and give notice, but you don't list the board itself. Sorry. They are only sued in their official capacity, and I think we were intending to speak collectively, but they are only sued, the members are only sued in their official capacities is my understanding of both the Curling's, we have two complaints, the second one. It seems like only to me, I was looking at this case, and I was thinking, you actually do have somebody who sued, you have an entity that sued, that actually does have an 11th Amendment immunity defense, and that's the board. You can't sue the board. You can sue individual members in their official capacity for injunctive relief under ex parte yunk, but you can't sue the board itself, but you didn't file a notice of appeal on behalf of the board. I beg your pardon. My understanding of the complaints, as it's been culled down and changed, and we got two, we got the third amended complaint, which the coalition group is traveling under, then the second amended complaint, but my understanding of the claims is that the purpose and the function of both the third amended complaint and the second amended complaint that the Curlings are still under, was that they were only asserting claims against the members in their official capacity, Judge. Okay. So, I apologize. Well, they can clearly do that, right? I mean, ex parte yunk allows them to do that, and I've read their complaints. Their complaints ask for injunctive relief to enjoin the defendants from using the election system that they contend violates the federal Constitution. That's the allegation, and the problem with that is because you need, we would ask this panel to look past that mere allegation that there is a constitutional right to a particular balloting system. But they're not asking for a particular balloting system. They're just asking that the DRE machines not be used. I mean, it seems like that's kind of a problem with your position. I think that's, with respect to Judge Rosenblatt, I think that's a bit formalistic to try to cabinet. That's certainly how they've couched it in some instances. Is there a specific and particular voting system that you contend that their complaints seek? It's kind of circular, because what they're saying is that the reason they have a right to force a change from the DREs, to prevent them from being used, is because they say that they have implied in the right to vote a right to a voter-verified auditable paper ballot. Well, actually, it seems to me what they're really saying. That's what we dispute. Right. But at the very bottom, what they're really saying is they have a right to have their vote counted. Are they not saying that? No, ma'am. No, ma'am. That's not, I mean, their argument, and I'll let them argue that, but our argument is that's really not the vote when you penetrate to the substance of the legal theory, this accountable vote theory. But we can't, we can't evaluate, we can't penetrate and evaluate the legal theory in an interlocutory appeal from a denial of immunity. Actually, you have in the past, in the McCullough versus Finley case, y'all have acted, I think in the opinion you wrote, published in December, Judge, is that the legal viability of these at a plausibility, kind of an Iqbal standard, these legal conclusions that there is this right in the Constitution to a paper ballot, that is something that you can test and apply a plausibility standard just to immunity as you have in, I think that was a judicial immunity case. You can look at that legal conclusion and test it on a plausibility standard just as you would do on a case like under Article III standing, whether there's an injury in fact. And the point we're trying to make, in terms of the Ex Parte Young analysis, which I think comes back to Judge Pryor's argument about whether this is a classic case. The district court thought this was a classic case for Ex Parte Young, okay? And the problem with that, and then, and I know we probably want to get into the appellate, the penitent appellate jurisdiction argument.  I don't want to have anything to do, but we are jumbling a lot of federal jurisdiction doctrines this morning, all right? So that was a case about judicial immunity and official immunity, and there's a complaint for damages there. There's not a complaint for damages here. No, Judge. This is a complaint for injunctive relief, right? For prospective relief. And I thought that your defense was an Eleventh Amendment immunity defense that brought it up here. It is. There's no argument. We think that there's . . . And Ex Parte Young makes it very clear, does it not, that they can seek in prospective injunctive relief against officials in their official capacity. That's what . . . In that kind of posture, whether they have stated a valid claim or not. I think you can, in terms of if that claim is not legally plausible, and I would point you to, there's actually a section, I think, in McCullough v. Finley, it may be in another case that we've cited. It may be in this recent Frere v. Conkright, I think, decision that has been cited as supplemental authority. There's a portion of that opinion that points out that if the argument for jurisdiction is really just there just to obtain jurisdiction, if it's legally implausible, then we think the court has a duty to inquire into whether or not that jurisdiction really meets . . . And I admit, Your Honor, I'm not saying it's a high threshold. I'm not saying that we get into a really hot controversy about the merits. But that is a low bar, but it's a bar that they can't meet here because there is no right to pick the manner in which an election is conducted. And that's really the substance of what's . . . But you don't do that on an interlocutory appeal, though. The reason we're here . . . The basis for your interlocutory appeal is one thing. Do they have a right to sue you? It's two things. It's the legislative amenity armament, which gets into the nature . . . Which is frivolous, as far as I can tell. I mean, their complaint does not enjoin anyone from making any regulations or anything like that. Their complaint seeks an injunction against the administration of an election using this system. I think . . . Here's the argument. There is no question that they have engaged in some pretty artful pleading at the third and fourth and fifth to try to get around the jurisdictional amenity arguments. The point we're trying to make is that when you take away the DRE machines, you're going to have to count these votes. And when you order the ballots . . . That's going to the merits. You can take up their pleadings and the merits before the district court. The only thing we want to know now is can they . . . Do you have . . . Do your clients . . . Are they immune from suit? They are immune from suit. And here's the reason why. There is no colorable federal right. There may be state rights to certain things regarding election procedures, but in terms of the manner in which an election is conducted, there is no federal right that says you have to have a voter-verified paper ballot. That's not in the constitutional text. Again, that's going to the merits. It's not going to the merits. It's going to whether or not this legal conclusion . . . Take it up with the district court. Exactly. That's what . . . We certainly have to reflect to that. That's what . . . See, here's the thing. Eleventh Amendment immunity is about being immune from being subject to litigation at all. To the vagaries of litigation, we're entitled to be immune from having to sit for depositions or having to deal with the lawsuit itself. Correct. There's actually one entity named in the complaint that would have that, but you didn't file a notice of appeal for that entity. But, that aside, that's not the same thing, though, is where they allege that you have violated, for example, the Fourteenth Amendment, and they've sought injunctive relief under Ex parte Young, you're subject to a lawsuit about that. Ex parte Young makes that very clear, and all the case law since Ex parte Young. Now, it may be you're exactly right that these are invalid claims, that in fact, what you're doing does not violate the Fourteenth Amendment, but that's not a question of immunity. That's a question of whether it's a valid claim or not. Those are two different things, aren't they? In terms of the invalidity, I'll try to answer your question and then I'll hush. There can be claims that are invalid on the merits, and there can be claims that are invalid because the legal theory is simply made up, and this argument that there is a constitutional right to pick. That's one and the same thing. I think there's a difference there, Your Honor, with respect, and I think the point we're trying to make is there is no federal right to this, and every case that's this case, the Eleventh Circuit in Webster v. Anderson has said that this is not a constitutionally based claim. So, we'd point out the basis. They say it is. They say it's about the federal constitution and federal voting rights, and if you think they're wrong about that, that's an argument you make to the district court, and if the district court agrees with you, you win. If not, then we come up and we can decide that later, but this is an interlocutory appeal about immunity. I think the point we're trying to make is there is no federal right in the constitutional text, which actually confers the manner of elections to the legislatures. This is not a case where a vote has been denied, not counted, diluted, or changed. That's not the issue. The issue is whether there's a federal right or a violation for Reong to operate on. Well, then you shouldn't have used the interlocutory appeal to make that case. That's right. Let's hear from Mr. Kain. I'm sorry, I don't know how to pronounce your name. Michael Chen, Your Honor, for the Curling Plaintiffs. Good morning, and may it please the court. The panel's observations this morning are absolutely correct. The merits are not before the court in this interlocutory appeal. This is a classic ex parte young case because we are presenting a suit for prospective relief against state officials who are assertively committing a violation of federal law. And you're not enjoining the promulgation of any regulations, you're just enjoining the use of this election system. Is that right? That's what you want. Exactly right, Your Honor. This does not implicate legislative immunity because we are suing executive officials for the implementation and enforcement of existing law. Now let me ask you, you're for the Curling Plaintiffs, so you have the Second Amendment complaint. Yes, Your Honor. You can't sue the election board itself as an entity, can you? No, we agree, and in fact, our complaint doesn't include a board as an entity in our federal constitutional claims. I looked at it this morning, it looked like it did. You might want to clean it up. It's not, they didn't file a notice of appeal on behalf of the board, so it's not a big deal, but that, at least at one time, I know it did, right? I agree, Your Honor. Pages 23 and 26 of our Second Amendment complaint exclude the board as an entity, but we agree that's not before the court in this appeal in any event. I just want to say a couple of quick words about standing because the defendants devote so much attention to it. Well, some of it makes it clear we can't address that, right? That's exactly right, Your Honor. So, I have an interesting question about that. Now, there would be, we would have to address whether they have standing to appeal, right? In the sense that the court has to verify its appellate jurisdiction. Its appellate jurisdiction. That's a separate question from whether there would be plaintiff standing in the district court, right? Exactly. The district court's denial of the motion to dismiss on standing grounds is not properly But there's really no question that they're standing on appeal, right? Because they were denied their motion for, to dismiss based on immunity, and so they have standing to appeal that, right? That's right. We agree that there's appellate jurisdiction over the immunity issues. The district court correctly rejected those defenses and standing isn't before the court in this appeal. That's right. If there are no further questions. Thank you. I don't have any. Do you? No. None for me. Thank you. Mr. McGuire, do you have anything to add? Your Honor, Robert McGuire for the coalition plaintiffs. I really don't have anything to add unless there's some particular question that pertains to my clients that the court's interested in. I don't have any. Thank you. Thank you. Mr. Stolter. Yes, Judge. My argument is, look to where in the Constitution, independent of showing where a vote was diluted or weighted differently, or where an election was called for and simply wasn't called by a state official, all of those we would concede would be a valid exercise of an ex parte young type case. Our point is that the same thing, the same absence of an injury in fact, which, what is that? It's an invasion. That's a standing question. We don't address standing in an interlocutory appeal. I'm trying to respond to the summit argument that was mentioned a moment ago. The inextricably linked appendant and appellate jurisdiction argument that we're trying to make is that what is an injury in fact? Well, at one of those problems it asks, that is the invasion of a legally protected right. And for young to operate, we know that there has to be an ongoing and continuing violation of federal law. Not state law under Pennhurst, but federal law. That's why a young exists. It's a preemptive shield against, that basically allows the preemptive raising. That's what they allege that is going on here. That's what has to be sorted out in the district court. With all due respect, we disagree, Judge. What we're trying to point out is. I understand you disagree, but I don't understand why. Because there's an absence of constitutional text that says that a paper, a voter verified paper ballot is required. Make that argument in the district court. We can review it on appeal, but that's not a question of immunity. With all due respect, we think that the 11th Amendment immunity applies because they're in their official capacity. And the question becomes whether young accepts that. And that's the argument we're trying to make. When they're seeking injunctive relief for what they allege to be a constitutional violation, it's like super Hornbook law, yes. The viability of that allegation under the law. What we're trying to point out is this is an injunctive relief and trying to provide government by injunction on a matter of policy. And that policy by the Constitution's Elections Clause was expressly committed to the state legislatures in the Elections Clause, the time, place, and manner by which elections are conducted. But what we're pointing out is there's no federal violation that allows young to operate in this situation. That's a merits question about their claim. With all due respect, Judge, I'd point you out to the case law we tried to cite that shows that no. I've read all the cases. You can't. I've taught most of them. I would point you to Papasan v. Lane, which talks about how you can look to some, you do, we're not allowing people simply to make an allegation on a legal conclusion that we don't look behind. What I lost with Summit Medical was Summit Medical v. Pryor. Which is your case. I'm aware. I think I know what it says. We do. And I want to— By the way, I lost. I think it's actually right. Well, let me point, I don't disagree with Summit and we're not, we're just, our point is this is a different case. Look at what the prong. There are three or four different, depending on how you count them, prongs of standing on Article III. There are arguably three different ways, requirements for young to operate. We're challenging all three and all four. That wasn't operative in Summit. In Summit, you only, there was only a contest about one of the prongs for an injury under Article III and that was redressability. There was never an argument in Summit about an injury in fact. You had a Class D felony if they performed an abortion. So that was clearly an injury in fact. Here the overlap is at least between, is there an invasion of a legally protected right and is there a federal ongoing violation that's plausibly pled. That's where we're arguing the overlap is. And if you look at the plainest, at least one of the- Make the arguments in the district court, Mr. Salter. All right. Well, Judge, we've tried to make our argument as best as we know how. I understand. I would ask the court to look again at Papasan and some of the other cases. We actually showed a Tenth Circuit that did talk about, in a particular case, and we're just asking you to take the case on its own merits. There was a case where the injury in fact of standing overlapped with an immunity issue under Ex parte Young and Love Amendment. So if there are no further questions, I'll hush. Do you have any? Nope. Thank you very much for your time. Thank you. Thank you. Hold on. So yes. Sconyers versus FNU Lockhart. I was just trying to wait for the courtroom to clear Mr. Green. That's the first time I've heard it. If we didn't hear it. Do we have a yesterday? No. So Mr. Frentzberg.